GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN
OF TEXAS v. EMMA H. BOLLMAN ET AL.

Decided November 22, 1899.

1. **Benefit Insurance—Dependents—Who Are.**

Where the by-laws of a benefit association permitted insurance in favor only of relatives or persons dependent on the member, such benefit could be extended to the members of a family in no way related to him, but with whom he had lived on terms of intimacy and affection, receiving from them board and attention in sickness, and contributing money, supplies, and gifts to them, though before his death he had removed to a distant State, from which he occasionally sent them assistance in money.

2. **Same.**

The facts in this case are distinguished from mere payment for board or for services rendered, from discharge of debts already incurred, from mere occasional gifts not intended as contributions towards support, and from the case of beneficiaries having independent means.

3. **Pleading—Amendment—Abandonment.**

An amended petition, delivered to the clerk but never actually filed, may be abandoned by plaintiff, relying on the original petition.

4. **Pleading—Supplemental Petition.**

Allegations in response to matters pleaded in defendant's answer may be presented by supplemental petition.

5. **Demurrer—Waiver.**

It is too late, after trial, to urge exceptions to plaintiff's petition.

6. **Amendment—New Cause of Action.**

An amendment which merely elaborates the cause of action first asserted is not barred, though filed after the expiration of the period of limitation.

7. **New Party—Corporation—Voluntary Association.**

To a suit against an alleged corporation, an amendment which meets a plea of defendant that it is not so incorporated, but is merely a voluntary association, by admitting such fact and continuing the suit against it as such voluntary association, does not implead another and different defendant.

8. **Immaterial Error.**

Where defendant denies that it is incorporated and plaintiff then proceeds against it as an unincorporated association, the introduction by plaintiff of a charter of defendant from another State, though irrelevant, need not be taken as prejudicial to defendant.

9. **Benefit Insurance—Designation of Beneficiaries—Will.**

A will disposing of a benefit certificate which formed no part of its holder's estate, and was not a subject of bequest, may constitute a valid written designation of the beneficiaries, in compliance with the requirements of the association.

APPEAL from Travis. Tried below before Hon. R. E. BROOKS.

*Robson & Duncan*, for appellant.

*Hogg & Robertson*, for appellees.

KEY, ASSOCIATE JUSTICE.—In 1883 John Fleming became a member of Texas Lodge No. 45, of the Ancient Order of United Workmen, and was entitled to receive and did receive a benefit certificate issued by appellant for $2000, to be paid on his death to his wife, Hannah H. Fleming. By the laws of the order, the $2000 referred to was no part

of Fleming's estate, though he had the right at any time to designate the person to whom the same should be paid, provided the person designated was a member of his family or related to him by blood or dependent upon him.

In 1888 Hannah E. Fleming died, and on the 15th day of July, 1889, John Fleming made a will in conformity with the laws of this State, which will was duly probated by the County Court of Travis County on the 15th day of January, 1894, and by the terms of which he directed that the $2000 covered by said benefit certificate should be paid to Emma H. Sigmund, now the plaintiff Emma H. Bollman, Augusta Sigmund, now the plaintiff Augusta Dorris, Annie Sigmund, the other plaintiff, and Minnie Sigmund, who is now dead.

John Fleming died October 23, 1893, and appellees brought this suit to recover the $2000 specified in the benefit certificate referred to. A judgment was rendered for them, and the defendant has appealed.

At the trial it was agreed that the plaintiffs were not members of John Fleming's family, and were not his blood relatives, the plaintiffs resting their right to recover upon the proposition that they were dependents upon said Fleming, and being such, and having been designated by him as the beneficiaries to receive the $2000 upon his death, they were entitled to maintain an action therefor. Whether or not they were such dependents was submitted by the court to the jury, and the latter returned a special verdict, finding that the plaintiffs were dependents upon John Fleming at the time he designated them as his beneficiaries in the certificate sued on, and at the time of his death.

This finding is assailed as follows in appellant's motion for a new trial in the court below, and in substance in its first assignment of error in this court:

"Because the verdict of the jury in finding that the plaintiffs were dependents upon the deceased John Fleming, at the time that they were designated as beneficiaries by the will of said Fleming, and at the date of the said Fleming's death, is contrary to the undisputed evidence in this cause in this:

"(a.)  That all the evidence, when considered together, shows that when Fleming was furnishing the goods, groceries, etc., to the Sigmund family, from 1881 to 1889, in September, it was in lieu of the payment of board and other attentions furnished and shown him by said family, and that such things were in compensation for such board and attentions.

"(b).  The undisputed evidence shows that the money which the members of said Sigmund family wrote to said Fleming for, after he had left Texas and gone to Washington, was not for the purpose of supporting any member of said family or of said family as a whole, or of any one or all of said plaintiffs, but was for the purpose of paying and discharging a debt incurred by said family, incident to the sickness and death of the sister and mother of the plaintiffs, and was never intended or used for the purpose of support or maintenance of the said family or any member thereof, or of all or either one of said plaintiffs.

"(c). That all the other moneys and gifts shown by the evidence as given by said Fleming to any of the members of said family were but occasional gifts, and in no way intended by him as contributions toward the support and maintenance of said plaintiffs, is conclusively shown by the undisputed evidence in this cause.

"(d). The undisputed evidence in this cause shows that there existed no legal, moral, or equitable obligation resting upon the said Fleming at any time, and especially after he left Texas, in September, 1889, to support and maintain, in any degree whatever, any member of the said Sigmund family, or all of them, or either or all of the plaintiffs, and that his gifts of money and other things were but expressions of gratitude for past favors and benefits bestowed upon him by the various members of said family, and that such obligation, if any is shown, was one which he could have cut off at pleasure."

Without stating the testimony in detail, its substance may be summarized as follows:

In 1881, Joseph Sigmund, a mason by trade, and his family, resided in the city of Austin, where he still resides. In addition to his homestead, he owned and still owns another building, which he rents for a boarding house, deriving therefrom about $35 per month. In the year stated John Fleming occupied a room in the neighborhood of the Sigmund residence. He became ill, and the Sigmund family, actuated by feelings of pity and sympathy, became interested in him and ministered to his wants. Some time during this year he began taking part of his meals and spending a good deal of his time with the Sigmunds. This intimacy gradually increased, until Fleming became almost one of the Sigmund family. He slept in a house near their residence, took his meals and spent his unemployed time with them. He was also sick at other times, and during these times (except on one occasion when he had the typhoid fever, and was cared for by the members of his church) he was nursed and cared for by Mrs. Sigmund and the other members of the family. When he was not sick he was generally engaged in some character of work. He does not appear to have owned property of any considerable value, and worked by the day and month. He lived with the Sigmunds, as above stated, and this continued from 1881 until November, 1889, during which time he frequently furnished the Sigmund family with groceries and other provisions ordinarily used for the support of a family; made the Sigmund girls, now plaintiffs in this suit, many presents of clothing, such as dresses, shoes, etc. During these years the Sigmunds made no charge against him for board, and the testimony indicates that the provisions, clothing, etc., supplied by him for the use of the family, were more than sufficient to pay for his board. It also appears that the Sigmunds became very much attached to Fleming, and he was very much attached to them, especially to the plaintiffs.

In November, 1889, Fleming left this State and went to Seattle, in the State of Washington, where he remained up to the time of his death, in October, 1893. At the time he left he told the Sigmund family if

at any time they needed anything, to let him know and he would assist them; and thereafter he sent them money, at various times, the exact amount of which is not disclosed by the testimony, but it is estimated by Mrs. Bollman at about $300.    Minnie Sigmund died in 1890, and upon receiving notice of her death Fleming sent the family $50, and upon receiving a letter from them stating that it would require another $50 to meet all the expense of her last sickness, he sent another $50.    In 1891 Mrs. Sigmund died, and, upon being apprised of the fact, Fleming sent the family $75, which was used in paying the expense of her last sickness. He sent other and smaller amounts before and after that time, but the number of these remittances, and the total amounts, the witnesses were unable to give.    At the time of Fleming's death he owed Jos. Sigmund $35, which the latter had advanced to pay Fleming's lodge dues.

It was not affirmatively shown that the plaintiffs, at the time they were designated as beneficiaries, and at the time of Fleming's death, owned no property of their own, and had no separate incomes, but the circumstances indicate that such was their situation.    Nor does the evidence show that Mrs. Dorris, who sues as a married woman, was not such and supported by a husband with ample means, at the times referred to.    However, these objections to the verdict were not made in the trial court, and are not urged in this court.    In fact, the assignment attacking the verdict seems to admit that at the times referred to, Mrs. Dorris and Mrs. Bollman, as well as the other plaintiff, were unmarried and living with their father, and nowhere in the motion for a new trial or in appellant's brief is it claimed that the plaintiffs failed to show that their pecuniary circumstances were such as to make the contributions made by Fleming for their benefit important and material.

Appellant seems, in effect, to concede that each and all of the plaintiffs were, at the times referred to, to some extent in necessitous circumstances; and we dispose of this branch of the case upon this assumption, and, as required by the authorities, consider only the objections urged against the verdict in the court below.    King v. Gray, 17 Texas, 62; Harrell v. Cattle Co., 73 Texas, 615; Clark v. Pearce, 80 Texas, 150; Degener v. O'Leary, 85 Texas, 171; Railway v. Ryan, 82 Texas, 571; Sutherland v. McIntyre, 28 S. W. Rep., 578.

We now consider these objections seriatim:

First.    It is contended that everything furnished the Sigmund family by Fleming, from 1881 to 1889, was intended as compensation for his board and the attentions bestowed upon him by the Sigmunds.

We do not think the evidence shows that compensation was the sole purpose which actuated Fleming in this regard.    Mrs. Bollman testified that she was satisfied that he furnished more than enough to pay his board.    Many of the articles referred to were delivered to the plaintiffs as gifts; and this fact, in connection with the proof of his strong attachment to them, warrants a conclusion that some of the articles were furnished for the purpose of assisting in the support and maintenance of the plaintiffs, irrespective of any legal or moral obligation to pay board.

Second. If it be conceded that the two remittances of $50 and the one of $75 were for the purpose of discharging debts already incurred, this would not necessarily break down the claim that appellees were dependents upon Fleming. The testimony shows that other and different sums were sent at other times, and not for the purpose of discharging existing debts; but we are not prepared to say that under no circumstances could money furnished to pay current debts be considered in determining the question of dependency.

Third. The third objection has been already answered, and we merely say that we can not agree that the evidence conclusively shows that the other moneys and gifts bestowed by Fleming were but occasional gifts, and in no way intended by him as contributions towards the support and maintenance of the plaintiffs.

Fourth. In reference to the fourth and last objection, we have reached the conclusion that, conceding that the plaintiffs were in straightened or necessitous circumstances, there was a moral obligation resting upon Fleming to render them material pecuniary aid, if his own circumstances were such that he could do so without injury or embarrassment to himself. The Sigmund family had been very kind to him under circumstances and in a manner which placed him under very strong moral obligations to that family; and, while the record discloses that he appreciated such obligation and had constantly endeavored to meet it, we are not prepared to say that what he had done for them relieved him from all moral obligation to render further assistance.

This disposes of all the objections urged against the verdict; and as none of them are considered tenable, we hold that the trial court properly refused to set it aside.

We overrule the assignments which complain of the charge of the court and the refusal of requested instructions. We think the court's charge was a full and accurate presentation of the law applicable to the issues submitted to the jury.

No error was committed in refusing to strike out the plaintiffs' original petition. The amended petition referred to was never filed, and though it had been delivered to the clerk, the plaintiffs had the right to abandon it and rely upon their original and supplemental petitions.

Appellant interposed special exceptions to appellees' supplemental petition, upon the ground that certain matters set up therein should have been pleaded by amended petition, and not by supplemental petition. The matters referred to were in response to matters pleaded in appellant's answer. Besides, the record shows that the main case was tried and judgment rendered for the plaintiffs on May 16, 1899, and that the exceptions referred to, together with appellant's motions to have judgment entered in its favor notwithstanding the verdict, and for a new trial, were acted upon and overruled on the 17th day of May, 1899. If there was any merit in the exceptions, it was too late to urge them after the trial, and they were properly overruled.

It is further insisted that the plaintiffs' cause of action was barred by

the four years statute of limitations.    The original petition was filed
September 14, 1897, in which it was averred that the defendant was a
corporation, organized under the laws of this State.    It alleged that
John Fleming died October 23, 1893.    The defendant filed its original
answer October 29, 1897, in which, among other things, it pleaded as
follows: "This defendant specially denies under oath that it is a cor-
poration, as alleged by the plaintiff.    And defendant alleges that it is
a voluntary benevolent association, without any income· except such
assessments and dues as are voluntarily paid by its members, and is or-
ganized· for the purposes of charity, as will more fully appear from the
objects of the order, and not for profit."

May 15, 1899, plaintiffs filed a supplemental petition, admitting that
the defendant was not a corporation, but was a voluntary association of
individuals.    The defendant's answer averred that the plaintiffs were not
dependents upon the deceased, Fleming, and the supplemental petition,
in addition to a denial of these averments, alleged in terms that they
were such dependents.

It is contended that the supplemental petition changes the cause of
action from a suit against one defendant to an action against another,
and that it sets up a new cause of action, in that the plaintiffs for the
first time allege their dependency upon Fleming.    Counsel for appellees
maintain that these objections are waived by a written agreement which
was introduced in evidence.    The agreement referred to relates to cer-
tain facts, and in the fourth paragraph thereof it reads:    "The sole
question of plaintiffs' right to recover herein being rested upon the
question as to whether or not they occupied such a relation to the de-
ceased, John Fleming, as would entitle them to become his beneficiaries."

As there is no dispute about the facts which appear of record in refer-
ence to the question of limitation, we are not disposed to hold that ap-
pellant waived its right to insist, as a matter of law, upon that defense.
However, we are not prepared to agree with appellant's counsel in the
legal propositions sought to be maintained.    The additional averment
that the plaintiffs were dependents upon John Fleming at the time he
designated them as his beneficiaries, and at the time of his death, was
not inconsistent with, and was but an elaboration of, the original peti-
ᵛtion; and therefore did not state a new cause of action.

The other question is not free from difficulty; but, as a corporation is
itself a voluntary association of individuals, with certain special privi-
leges conferred by law (Bacon on Benefit Societies, section 49; Railroad
v. Fifth Baptist Church, 108 U. S., 317), and as the terms corporation
and association are sometimes used interchangeably (United States v.
Trinidad Coal Company, 137 U. S., 169), and as the answer raising this
question is, by its own terms, interposed by the defendant in the action,
we rule against appellant on this subject.    Nelson v. Oil Mill, 51 S. W.
Rep., 514; 6 Thomp. on Corp., sec. 7679.

The text book cited shows that amendments in this respect may be
made when they do not make another and different defendant.    In this

case the plaintiffs sued the Grand Lodge of the Ancient Order of United Workmen of Texas, alleging that the defendant existed by being incorporated under the laws of this State. The answer is filed on behalf of the defendant referred to in the plaintiffs' petition, and in substance it admits that it is the Grand Lodge of the Ancient Order of United Workmen of Texas, and asserts that it does not exist by virtue of a charter granted to it as a corporation, but on account of voluntary association. The supplemental petition sought no recovery against any private individual, and, like the original petition, asked for judgment against the defendant artificially designated the Grand Lodge of the Ancient Order of United Workmen of Texas. In view of these facts, and this condition of the record, we hold that the supplemental petition does not implead another and different defendant.

If error was committed in admitting in evidence the charter granted by the State of Kentucky to the Supreme Lodge of the Ancient Order of United Workmen, such error was harmless, as the charter referred to, if not admissible, was wholly immaterial and could not have influenced the decision of the case.

By agreement of the parties, the trial court treated Fleming's will as a sufficient designation of the plaintiffs as his beneficiaries, under the provisions of appellant's by-law authorizing him to designate and change the beneficiaries. Therefore, the plaintiffs' right to recover does not depend upon Fleming's power to bequeath his benefit certificate. It is conceded that the will, if it had not been probated, constitutes such written designation of the plaintiffs as beneficiaries as will entitle them to recover, if they were dependents upon Fleming.

This opinion embraces our conclusions both of law and fact, and, having decided all the questions involved against the appellant, the judgment will be affirmed.

*Affirmed.*

Writ of error refused.