*Graydon W. CALLAN et al., Appellants,*

v.

**BARTLETT ELECTRIC COOPERATIVE,**
Inc., Appellee.

No. 11553.

Court of Civil Appeals of Texas.

Austin.

Jan. 3, 1968.

Rehearing Denied Jan, 24, 1968.

Dunnam, Dunnam & Dunnam, Vance Dunnam, Waco, Bowmer, Courtney & Burleson, Jim D. Bowmer, Bob Burleson, Temple, for appellants.

Jones, Boyd, Westbrook & Lovelace, Dan E. Mayfield, Waco, for appellee.

O'QUINN, Justice.

Graydon W. Callan suffered an electric shock in May, 1964, resulting in extensive personal injuries, while attempting to un-shackle the drag line of a crane operated by another workman in the vicinity of high voltage electric lines owned by Bartlett Electric Cooperative, Inc., during construction of a dam across the Lampasas River at Stillhouse Hollow in Bell County.

Callan brought this suit seeking damages in the sum of $75,000, and Hartford Accident and Indemnity Company intervened to

assert its claim in excess of $7,600 for payments made to Callan, or for his benefit, under the Workmen's Compensation Law. (Article 8307, sec. 6a, Vernon's Ann.Civ. Sts.)

After answering by general denial, subject to motions to quash and its pleas in abatement, Bartlett Electric on April 24, 1964, moved for summary judgment. Callan and Hartford answered and opposed the motion, but did not move for summary judgment.

The trial court entered judgment for Bartlett Electric Cooperative, Inc., May 11, 1967, on a finding that the pleadings, depositions, admissions, and affidavits showed an absence of genuine issue of any material fact except as to amount of damages.

Callan and Hartford have appealed from the award of summary judgment. Appellants contend there is a genuine issue as to material facts and appellee is not entitled to judgment as a matter of law. (Rule 166–A, Texas Rules Civ.Proc.)

It is uncontradicted that Bartlett Electric Cooperative, Inc., constructed an electrical line to and on the construction site of the Stillhouse Hollow Dam on the Lampasas River and supplied electric power to Missouri Valley Constructors, Markham and Brown, and Gibraltar Construction Company. Appellant Graydon Callan was employed by Markham and Brown as a carpenter helper and swamper on a drag line.

Appellants pleaded that Bartlett Electric negligently maintained power lines transmitting high voltage electricity at a location where Bartlett Electric knew workmen were operating cranes and drag lines of great height. The allegations were that Bartlett Electric did not warn or give notice to the workmen that the high voltage lines had a zone of electric current around the lines that would transmit electricity into the cranes and drag lines upon coming within the charged zone. Appellants alleged that these facts were peculiarly within the knowledge of Bartlett Electric and known by Bartlett to be outside the knowledge of the ordinary workman. The pleadings further averred that such negligence proximately caused the severe injuries to Callan.

Bartlett Electric's motion for summary judgment asserted that Callan had knowledge of the power lines and knew "if contact should be made by the crane and the power lines" this "would constitute a dangerous condition to him." It was alleged that Callan appreciated the nature and extent of this danger and on the occasion of his injury voluntarily exposed himself to the danger. It was further asserted that Callan's son, Jerry, who was operator of the crane at the time of his father's injury, also knew about the power lines and knew that if the boom of the crane or its cable "should come in contact with the power lines" this would endanger his father. Additional allegations were that Jerry Callan appreciated the nature and extent of the danger and knew his father would be unshackling wooden forms from the cable, or drag line, of the crane and would be exposed to danger of electrical shock "should the crane or its cable make contact" with the power lines.

Neither the answer nor the motion for summary judgment replied specifically to the allegations by appellants that Bartlett Electric was negligent in not warning Callan and other workmen that the power lines had a zone of electric current capable of transmitting electricity to a crane or boom without actual contact with the power lines.

Bartlett Electric filed an affidavit in support of its motion executed by William P. Alexander, Jr., who for 15 years past had been employed by Bartlett Electric as its chief systems engineer. Alexander swore that the "amount of voltage as carried in the lines * * * as a matter of scientific principle will not arc a distance of more than one-half inch from the line. * * *" Alexander also swore that a person or an object capable of conducting elec-

tricity "would have to come within one-third to one-half inch" of the power line "to create an arc of electricity" from the line to the person or conductor.

Written depositions of both Graydon W. Callan and Jerry Callan were before the court. Both men swore that the crane boom had come to rest and was not moving at the time Graydon Callan sought to unshackle a wooden form from the cable. Jerry Callan swore the crane boom was not in contact with the power line and was not closer than six feet from the line. Jerry Callan declined to say that he saw an arc of electricity, but did testify that he heard some cracks. He testified he did not see fire fly, although he declared that " * * * fire just jumped from that line over to that boom." When asked if he was "taking precautions to keep the boom away from the wire," Jerry Callan testified, "Yes, sir, I know to keep the boom away from wires * * * But it jumped fire * * * And they'll sure do it, too."

Jerry Callan also testified that when he saw his father fall, he left the crane cab at once to attend the stricken man. Jerry Callan said that in his haste he left the motor of the crane running. The boom could not move automatically. For the boom to move, he testified, one had to manipulate it. After reaching his father, Jerry saw a mechanic enter the cab and kill the motor on the crane. At that time the boom was six feet or more away from the power lines.

■ Bartlett Electric argues that no evidence by appellants had the legal effect of raising a genuine issue of fact. As we view the record, there was an issue of material fact raised by the testimony of Jerry Callan that while the boom did not come closer than six feet to the power line, electric current reached the boom and injured Graydon Callan when he touched the shackles on the drag line, and by the contradictory testimony of Alexander that as a scientific principle electric current in the power line would not arc more than one-half inch to transmit electricity to the boom.

The testimony of Alexander in effect seeks to negative the theory of appellants' case that Bartlett Electric was negligent in not warning Graydon Callan that the power lines were surrounded by a charged zone, a fact peculiarly within the knowledge of Bartlett Electric, and that injury could result without any contact whatever between the crane and the power line.

If the evidence of Alexander as the pronouncement of a purported scientific principle can be said to be conclusive on the court, then Jerry Callan's version of what happened does not raise an issue of fact. We think that for the trial court to grant summary judgment in this case, under the pleadings, depositions, admissions, and affidavits on file, it was necessary to reject Jerry Callan's testimony and to accept the scientific principle announced by Alexander as conclusive. We believe the law to be contrary and that the trial court erred in taking such action.

■ Alexander qualified as an expert witness in the field of electrical engineering. As an expert witness, Alexander was not entitled to such preferential treatment that no issue could be made by contradicting what he said. A jury is not bound to accept the testimony of an expert witness as true, and his opinion is entitled only to such weight as the jury may see fit to give it. Universal Life and Accident Ins. Co. v. Nanes, 92 S.W.2d 473 (Tex.Civ.App., Amarillo, writ dsmd.). Alexander was an expert testifying for his employer, Bartlett Electric, for whom he had worked fifteen years. The testimony of an expert, appearing as a witness for his master, is in the position of any interested witness. The weight of his expert testimony is for the jury and his credibility also is for the jury. Houston E. & W. T. Ry. Co. v. Southern Pine Lumber Co., 6 S.W.2d 418 (Tex.Civ. App., Beaumont, no writ).

The Supreme Court of Texas, in applying these principles to expert testimony, has said that " * * * the occasion has to be at least highly exceptional when such

testimony, *even though not contradicted by an opposing expert*, must be deemed true as a matter of law." (Emphasis added.) Luttes v. State, 159 Tex. 500, 324 S.W.2d 167. The Supreme Court held that the testimony of the expert was but evidentiary and "never binding upon the trier of facts." In this connection, the Court observed also that "The matter of credibility of the witness, that is to say, the extent to which his judgment, like that of all humans, however learned, may or may not be overconfident, zealous or 'slanted', is surely not altogether beyond the reach of the fact-finder." 324 S.W.2d 167, 189, col. 1.

By terming Alexander's statement a "scientific principle," his testimony that electric current would not arc more than one-half inch acquires no additional legal weight. While it is a rule of law recognized by the courts of this State that evidence will be rejected if it is clearly contrary to undisputed laws of nature, the testimony must contravene such laws beyond any possible doubt. San Antonio & A. P. Ry. Co. v. Biggs, 283 S.W. 627 (Tex. Civ.App., Galveston, writ dsmd.); Missouri, K. & T. Ry. Co. v. Morin, 144 S.W. 1191 (Tex.Civ.App., Dallas, writ ref.). The rule has also been stated in American Jurisprudence that " * * * where a court cannot say as a matter of law that the testimony of a witness is contrary to scientific principles or the law of nature, the question whether the testimony does so conflict should be regarded as one of fact for the jury to determine." 30 Am.Jur.2d, Evidence, sec. 1086, p. 240, as documented by fn. 4.

In addition to the pleadings already noticed, appellants alleged that the power lines of Bartlett Electric "were constructed in an area dangerous to workmen, were hung too low, without insulation, and no warning of arcing potential or voltage was given to the workmen who were required to go about the lines in the performance of the tasks of their employment."

Alexander described the power lines as three in number, mounted three and one-half feet below the top of poles standing 29 feet above ground. This placed the lines about 25½ feet above ground at the poles. Jerry Callan testified that the boom on the crane was 70 to 80 feet long. Alexander stated that the wires were "at or above the minimum clearances in accordance with the National Electrical Safety Code as published in March of 1948 by the National Bureau of Standards, Handbook 30" and were "in accordance with the accepted customs and practices of electrical companies in the Bell County area." There was no testimony as to what constituted the minimum clearance prescribed by the safety code, nor as to the height of wires that conformed to accepted customs and practices in Bell County. The code was not placed in evidence. The only testimony on this point was the conclusion of Alexander that the wires did meet the code and did conform to local custom.

It was shown by Jerry Callan's deposition that warning signs were erected in the area enjoining the workmen to "Be Careful," "Stay Awake," and "Keep Booms Out of Lines," and reading, "Accidents Your Own Fault." No evidence was offered of notice or warning that the lines were high voltage and were dangerous even without contact.

The Supreme Court of Texas, in answer to certified questions, held in 1924 that an electric company had the duty to exercise ordinary care to give workmen, employed by an independent contractor, "notice or warning of the danger of the boom coming in contact with, *or in close proximity to,* the uninsulated high-voltage wires * * *" (Emphasis added) Galveston-Houston Electric Ry. Co. v. Reinle, 113 Tex. 456, 258 S.W. 803; Court of Civil Appeals opinion, 264 S.W. 783. The holding of the Reinle case that warning to the independent contractor would not discharge the duty of the occupier of the land to warn the contractor's employees was expressly over-

ruled in Delhi-Taylor Oil Corporation v. Henry, 416 S.W.2d 390 (Tex.1967). This question is not in the case at bar. In the Delhi-Taylor case the defendant company had warned the independent contractor, and this was held to be notice to the employee. There is no evidence of such warning in this appeal. The Reinle case remains significant for its recognition of danger from a boom coming "in close proximity to" uninsulated high-voltage wires.

In an opinion adopted by the Supreme Court, the Texas Commission of Appeals in 1922 recognized danger from "near approach" to high-voltage wires in this language:

"The public knows that it is dangerous to touch a live wire, but very few know that *there exists danger of death from this powerful current by near approach to the wire so charged, without actually coming in contact with the wire.* Only those who are engaged in the business, and those who have stood beside some inanimate form whose scorched and burned flesh bears mute evidence to its tremendous power, know this. Because it is a legal business and in the service of the public should not, and does not, release the defendant from being subject to all the requirements of the law, that it conduct that business in such manner that will result in reasonable protection to those on its premises either on business or by invitation, express or implied." (Emphasis added)

McCoy v. Texas Power and Light Co., 239 S.W. 1105 (Tex.Com.App., opinion adopted by Sup.Ct., 1922).

In Southwestern Gas & Electric Co. v. Hutchins, 68 S.W.2d 1085 (Tex.Civ.App., Beaumont, writ dsmd.), the contention that the plaintiff was negligent as a matter of law was rejected by the court in holding that the issue was one for the jury under facts similar to the case at bar. The injured person and fellow workmen attempted to keep a cable from coming in contact with the power line, and it was their testimony the cable did not come closer to the wire than one foot. Defendant offered testimony that electricity could not jump over a distance of more than one-half inch.

The principle of arcing has been recognized by the courts of other jurisdictions. The Supreme Court of West Virginia observed in an early case that it is a natural law that the tendency of an electric current is to pass to the ground and in passing from the wire over an object on the ground it will arc or jump to that part nearest the wire. Owen v. Appalachian Power Co., 78 W.Va. 596, 89 S.E. 262. Arcing a distance of one to three feet was under consideration by the Supreme Court of Tennessee in Kingsport Utilities, Inc. v. Brown, 201 Tenn. 393, 299 S.W.2d 656, 69 A.L.R.2d 87. The California court of last resort recognized and considered the duty owing to a person ignorant of the propensity of electricity to arc or leap over intervening space when a metal object comes in close proximity to the power wire. Fairbairn v. American River Electric Co., 179 Cal. 157, 175 P. 637.

■ Whether testimony contradictory to evidence offered as a scientific principle will be accepted to raise an issue of fact for the jury should be decided in cases of doubt in favor of declaring an issue to exist. It has been said that if the court undertakes to go outside and test the evidence by reference to scientific principles, it would seem the court cannot properly close its eyes to the possibility that there may have been some facts or circumstances, not disclosed, that would reconcile the testimony of the witness with scientific principles. 21 A.L.R. 141, 146, col. 1.

■ We believe the trial court, since this was a case of summary judgment, should have given appellants the benefit of every reasonable inference that could be drawn in favor of their position. The underlying purpose of Rule 166–A was to eliminate patently unmeritorious claims, and was not intended to deprive litigants of their right to a full hearing on the merits

of any real issue of fact. Whatever doubts the trial court had as to the existence of genuine issue of material fact should have been resolved against the party moving for summary judgment. These principles are clearly stated by the Supreme Court of Texas in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929.

Bartlett Electric assigns twenty-five counter points of error. The first sixteen points are briefed together in support of the trial court's award of summary judgment. We have discussed and overruled these points.

The last nine points, 17 through 25, claim error of the trial court in overruling Bartlett Electric's motions to quash citation and pleas in abatement.

Most of the cases discussed in Bartlett Electric's brief, holding citations to be fatally defective, pertain to cases of default judgment in which no appearance was made. The case at bar is not controlled by these authorities.

The record shows that Appellant Callan's original petition complaining of his injury of May 2, 1964, was filed April 15, 1966, naming as defendant "Bartlett Rural Electrification Authority." Citation was issued April 15, 1966, suggesting that the corporation might be served "by serving one of its officers at Bartlett, Texas." The return shows that the citation was "delivered to Bartlett Rural Electrification Authority by serving one of its officers H. M. Keith" on April 28.

Bartlett Electric Cooperative, Inc., filed motion to quash the citation on May 23. The record does not disclose that a plea in abatement was filed as to this citation and service. Subsequently, on May 26, 1966, Callan filed his first amended petition naming as defendant "Bartlett Electric Cooperative, Inc. (being one and the same entity and same corporation as Bartlett Rural Electrification Authority.)" Callan alleged that "said defendant" had been

"previously served with citation" and had answered.

On August 29, 1966, Bartlett Electric moved to quash a citation issued August 4 and in separate pleadings answered Callan and the intervenor by general denials. All motions to quash and pleas in abatement were overruled by the trial court January 23, 1967.

On appeal Bartlett Electric "contends that Bartlett Electric Cooperative, Inc., was never properly before the trial court until after the expiration of the two year Statute of Limitation." We do not find from the record that Bartlett Electric at any time in the trial court affirmatively pleaded the statute of limitations. The motion for summary judgment filed April 24, 1967, does not affirmatively present the statute of limitations as a ground for judgment. The motion was addressed only to the merits of Callan's action in tort.

The record shows that Bartlett Electric Cooperative, Inc., was the only power company having the word "Bartlett" as a part of its corporate name serving the Stillhouse Hollow Dam site on May 2, 1964, the date of Callan's injury. H. M. Keith, or Horace Keith, was general manager of the corporation and lived at Bartlett. The home office of the corporation was in Bartlett. The corporation had been advised by the Secretary of State that as a "co-op" the company did not need to name a registered agent. The cause of action alleged by Callan in his original petition was identical with the cause alleged in his first amended petition. In response to requests for admissions, Bartlett Electric admitted it did "not know of any corporation or company known as 'Bartlett Rural Electrification Authority.'"

█ It is settled law that if the intended defendant is sued under an incorrect name, a judgment will be valid after service on defendant under the misnomer, even though defendant has a name that is different. The rule and its converse were

stated by this Court in Thomas v. Cactus Drilling Corporation of Texas, 405 S.W.2d 214 (Tex.Civ.App., Austin, no writ), as follows:

"If a person thought to be named A is sued and served under that name the judgment against him is valid even though his name is B. But if one has a cause of action against a person whose name is A and there is another person with the same or similar name, service on the person against whom one has no cause of action will not support a judgment against the one amenable to the cause of action asserted." 405 S.W.2d 214, 216, col. 2.

We think it clear under the record that Callan and the intervenor intended to sue Bartlett Electric Cooperative, Inc., but by mistake called the defendant "Bartlett Rural Electrification Authority." This is not a case of two separate corporations. There was no corporation or other entity named Bartlett Rural Electrification Authority. Only one cause of action was pleaded by Callan and only one electric company fit the description he applied to the defendant, although he called it by the wrong name. The misnomer was corrected in the first amended petition filed May 26, 1966.

The original petition was filed before the expiration of two years following Callan's injury. The amended petition was filed about 24 days after the two-year period ended. But meanwhile Bartlett Electric Cooperative, Inc., had filed a motion to quash the citation issued the day suit was filed. In its motion the corporation admitted in effect that it was the defendant in the suit. Bartlett Electric thereafter was estopped and precluded from asserting that it was not sued until the amended petition was filed in which the corporation's name was correctly stated. Weatherford, M. W. & N. W. Ry. Co. v. Crutcher, 141 S.W. 137 (Tex.Civ.App., Austin, no writ). The amended petition related back to the time of the filing of the original petition. Butler v. Express Publishing Co., 126 S.W.2d 713 (Tex.Civ.App., San Antonio, writ ref.), citing Jago v. Indemnity Ins. Co. of North America, 120 Tex. 204, 36 S.W.2d 980.

The rule in cases of this nature was stated in Wisconsin Chair Co. v. I. G. Ely Co., 91 S.W.2d 913 (Tex.Civ.App., Fort Worth, no writ) in the following language:

"The purpose of the statutes of limitation is to prevent the assertion of stale demands, and to effect such purpose they are wholesome and should be applied. We find many cases in which defendants are sued in such a manner that the improper designation of their names will not serve to toll the statutes of limitations, but under our broad and equitable system, it is held that where such a defendant makes his appearance, a subsequent amendment, correctly naming the defendant, relates back to the institution of the suit and tolls the statute." 91 S.W. 2d 913, 914, col. 2, citing Grand Lodge A. O. U. W. of Texas v. Bollman, 22 Tex.Civ.App. 106, 53 S.W. 829 (Austin, writ ref.) and Weatherford, M. W. & N. W. R. Co. v. Crutcher, supra.

Of course, where recovery is sought against a new and different party, an amended petition does not fall within the rule that proper amendments of pleadings will toll limitation from the date suit was instituted. The difference between that principle and the application here involved is obvious. West v. Johnson, 129 S.W.2d 811 (Tex.Civ.App., Fort Worth, writ ref.).

Bartlett Electric's counter points 17 through 25 are overruled.

The judgment of the district court is reversed and the cause is remanded for trial in conformity with this opinion.

Reversed and remanded.