[Sac. No. 2522.    Department Two.—October 7, 1918.]

JOHN FAIRBAIRN, Respondent, v. AMERICAN RIVER ELECTRIC COMPANY (a Corporation), Appellant.

NEGLIGENCE — ELECTRIC POWER COMPANY — MAINTAINING WIRES ALONG ROAD—DEGREE OF CARE.—A person or company maintaining an electric power transmission line along or over a public or private road, while not an insurer of the safety of the public, is required to exercise a high degree of care in placing the wires so as not to interfere with traffic on the ordinary highway, and so as to avoid contact with and injury to any person or object which may reasonably be expected to pass under the wires.

ID.—REASONABLE CARE—USE OF ALL KNOWN MEANS.—The standard to be attained is that of ordinary and reasonable care, and this means such care as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury there-

from, would exercise under the circumstances, in order to prevent injury. Where death may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it.

ID.—HEIGHT OF WIRES—DUTY OF COMPANY.—An electric power company, in stringing its wires along a public highway, is bound to take notice of farming conditions and customs in the country through which its wires are placed and to provide against interference with them, and where, at the time of the construction of the line, there were in use upon farms in the locality haystacking derricks exceeding in height the height of the wires, and there was a custom of moving the derricks during the haying and threshing season along and over the highways to and from farms, it was the duty of the company to ascertain such facts and to have erected its wires high enough so as to permit free and safe passage of the derricks under them.

ID.—MOVING DERRICK UNDER WIRES—PERSONAL INJURIES—LEAPING OF ELECTRICITY—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—In an action for damages for personal injuries received by a boy of the age of eighteen years while assisting in moving a haystacking derrick under the wires of an electric power company suspended over a public road, the question of the contributory negligence of the plaintiff is one of fact for the jury, where the accident was occasioned by the leaping of the electricity due to the boom of the hay derrick coming in too close proximity to the wires, and it was shown by the evidence that the plaintiff was ignorant of the propensities of electricity to leap or arc, and that every effort was made to keep the boom as far as possible from the wires.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chickering & Gregory, and Redman & Alexander, for Appellant.

Stanley Moore, and Gibson & Woolner, for Respondent.

LORIGAN, J.—In this action for damages for personal injuries alleged to have occurred through the negligence of the defendant, plaintiff had a verdict and judgment for twenty-five thousand dollars, and from that judgment and an order denying a new trial the defendant appeals. The defendant in 1906 constructed a power line along the public highways through the county of Sacramento from its power

plant in the mountains near Placerville to the city of Stockton for the purpose of distributing electricity for public use, and in running along the side of the Middle Jackson road in Sacramento County, in the vicinity of what is known as Walsh station, the wires of the defendant crossed a lane connecting the farm of a Mr. Humphrey with the said Middle Jackson road at a height of 27 feet 8¾ inches above the level of the ground. On July 7, 1910, plaintiff, with his father and brother and the hired man, started to haul a haystacking derrick known as the Schmeiser derrick from the farm of Mr. Humphrey along the lane to the Middle Jackson road. This derrick measured from the ground to the top of its boom 30 feet 4 inches, and was of the stationary type—that is, the boom could not be lowered or taken down for transportation; it had to be moved with the boom erect. A team was hitched to the derrick and the party proceeded down the lane to the Middle Jackson road. When they were about to pass into the road they looked at the wires which crossed the lane along its side to see whether the derrick would pass freely under them, and reached the conclusion that the top of the boom was a little lower than the power wires. It was suggested, however, by one of the parties moving it that if the hind wheel of the derrick truck was removed this would lower the boom about two feet and allow free passage under the wires. The wheel was accordingly removed and the derrick moved forward a couple of feet by hand, the horses having been unhitched from it. When so moved forward, but before it was moved under the wires, plaintiff with his father went to the other side of the Middle Jackson road to be assured whether the boom now dropped by the removal of the wheel would clear the wires, and both being of the opinion that it would, they with the others proceeded to run the derrick forward, pulling on an iron cable attached to the boom so as to swing it clear under the wires. As the boom was being pulled under the first wire (there were three), and without actual contact with any of them, the electricity arced through the intervening space and passed down the boom cable which the plaintiff had hold of into his body, inflicting injuries which necessitated the amputation of his left arm and both legs below the knees.

The claim of the plaintiff in the action was that his injuries were occasioned through the negligence of the defendant in stringing its wires along the highway so low as to interfere

with the free passage of the derrick under them. In its answer defendant denied any negligence on its part and alleged that the injuries of the plaintiff were caused through his own negligence.

This is the second time this case is here on appeal. It first came here for consideration in 1915 on an appeal by defendant from a verdict and judgment then also entered against it for twenty-five thousand dollars, and the judgment was reversed on the ground that the plaintiff had failed to prove any negligence on the part of the defendant in the construction, maintenance, and operation of its power line. (*Fairbairn* v. *American River Electric Co.*, 170 Cal. 115, [148 Pac. 788].) We shall refer to this ground for reversal more particularly later.

The law with reference to companies engaged in carrying electricity along the public highway is well settled and is set forth at considerable length in the opinion on the former appeal. For present purposes we may content ourselves with stating the general rule on the subject as there declared, which is that: "Owing to the highly destructive power of electricity when carried in quantities sufficient for power purposes, and to the fact that it is not visible to the eye or apparent to the other senses, a person or company maintaining an electric power transmission line along or over a public or private road, is required to exercise a high degree of care in placing the wires so as not to interfere with traffic on the ordinary highway and so as to avoid contact with and injury to any person or object which may reasonably be expected to pass under the wires. . . . The standard to be attained is that of ordinary and reasonable care, and this means such care as a reasonably careful and prudent person, having in view the dangers to be avoided and the likelihood of injury therefrom, would exercise under the circumstances, in order to prevent injury. Where death may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it."

The claim of plaintiff in this action is that defendant in stringing its wires along the Middle Jackson road and across the Humphrey lane violated this rule; that it was bound to take notice of farming conditions and customs in the country through which its wires were being placed and to provide

against interfering with them; that at the time defendant constructed its power line there were very many derricks exceeding in height 27 feet 8¾ inches, the height at which the power lines of defendant were strung, used upon farms in stacking and baling hay and threshing which every season were being conveyed over the highways and the lanes or roads leading therefrom and upon the farms about for use thereon; that it was the duty of the defendant to ascertain this fact and to have erected its wires high enough so as to permit free and safe passage of said derricks under them and to prevent danger. There can be no question about the soundness of this contention of plaintiff, and the principal point arising on this appeal is whether the evidence shows a use upon farms in the locality in which the wires of defendant were strung and the accident happened, of derricks exceeding in height the height of its wires, and the custom of moving them at certain seasons along and over the highways and lanes of the county and from farm to farm. The reversal on the former appeal was ordered because the evidence then given on the part of plaintiffs was not deemed sufficient to prove this fact. On the former trial plaintiff appears to have limited himself to proving the use only in the vicinity of Walsh station of the Schmeiser derrick of the stationary pattern similar to the one he was moving when the accident happened, and it further appeared from the evidence that only two such had been sold in the county and that the style had gone out of manufacture, and while it was also proven that home-made stationary derricks were in use at the time the power line was constructed, it was not shown that they were as high as the wires of the defendant. On the second trial, however, plaintiff introduced evidence showing the use quite extensively in Sacramento County when the power line of the defendant was constructed of both patented and home-made derricks 28 feet and over in height which were used in stacking and baling hay and threshing and their movement over the highways and over the lanes and roads to and from farms. It is, of course, of no moment what the style of derricks or stackers may have been—whether the Schmeiser or other style or home-made derricks—it is enough to have required defendant to place its wires for the passage under of derricks of whatever make at a greater height than that at which they were strung, if derricks taller than the height of said wires were usually used

CLXXIX Cal.—11

in the county at the time its power line was constructed and were usually moved over and across the highways, roads, and lanes of the county. On this trial it was shown by witnesses produced on behalf of plaintiff that there were in use prior to 1906, when the power line of defendant was constructed, in the region where the accident in question happened, stacking derricks of from 28 to 30 feet in height. The two main types of these derricks were the Jackson Eclipse, and later the Schmeiser derricks, and there were also home-made derricks. The testimony of the witnesses referred to is substantially as follows: L. Carrington, a salesman for the Sacramento branch of Baker & Hamilton from 1896 to 1908, testified that their firm sold the Jackson Eclipse haystacker during that period throughout the Sacramento valley and that it was one of the most common stackers in use. He identified this stacker in a catalogue of Baker & Hamilton issued in 1902, which showed that its uprights above the axle of the truck on which they rested were 28 feet 8 inches in height. G. W. Hausman, a field-man, employed by the same branch of Baker & Hamilton from March, 1901, to March, 1914, testified that in the year 1906 when the power line of defendant was constructed the Jackson Eclipse stacker was the most common stacker in use in Sacramento County; that this stacker was drawn by horses and moved upright and that he had never seen one taken down. F. S. Hoffman, an employee of the Byron Jackson Machine Works, the original manufacturer of this type of derricks, also testified that when these stackers were moved from place to place they remained upright. H. D. Millard, a retired farmer, who had been engaged in farming for many years in that portion of the county of Sacramento near Walsh station, testified that he had used all kinds of stackers; that he used the Jackson stackers on farms where he did threshing in the neighborhood of where the injury occurred as much as thirty years ago; that he also owned a Cooper derrick 31½ feet high and that he had been accustomed to move such stackers and derricks from place to place along nearly every road in the county in that vicinity and so used them up to 1908. A. Joseph, a farmer in the Lisbon district of Yolo County, testified that he bought and used a Jackson Eclipse stacker as early as 1903; that he was accustomed to transport it from place to place along the county roads; that he owned two places about thirty miles

from where the accident in question occurred, and was accustomed to haul his stacker from one of his ranches to the other along the public highways. O. A. King, a foreman of a ranch near Freeport in Sacramento County, testified that when he went into the employ of the owners of the ranch in 1910 he found one of the Jackson stackers then in use upon the property and that it had been in use ever since. George D. Colby, a farmer residing in the vicinity of Clarksburg, Yolo County, testified that he had been using a Jackson stacker since 1902, and used the same on his own place and on places of three or four of his neighbors, and was accustomed in the early years to haul it along the public roads until the telephone wires were strung so low as to prevent him from getting the stacker upon the highways. M. Madsen, a ranch foreman in Reclamation District No. 307 in the same region, testified that he used both the Jackson Eclipse and Schmeiser haystackers and was accustomed to transporting them along or across the public roads under the transmission wires of the Great Western Power Company, which in that region were 35 feet above the highway. J. A. Branscombe, a farmer residing near Freeport for twenty-three years, and who had previously resided and been engaged in farming in the vicinity of Walsh station, testified that he frequently for years prior to 1906 hauled home-made derricks along the public roads, and that he had also seen the Jackson Eclipse stackers being moved along the highways in that region. Harry Sherwood testified that he had resided at Walsh station for about twenty-four years; that during the years prior to 1906 that region was more given to hay growing than at present, and that during that period he had seen Jackson stackers and other types of stackers being moved from place to place along the public roads. Ed. Scholfield, whose business was ranching in the vicinity of Walsh station, where he had resided all his life, testified that he had used home-made stackers 25 to 26 feet in height resting on wagons, and had driven along the county roads with these stackers in a stationary and upright position, and that he had seen threshing stationary derricks two feet higher—27 to 29—going along the highways. William Wason, who was engaged in farming for about thirty years in the vicinity of Florin testified that he had hauled derricks built upon wagons along the public roads, which derricks ranged from 20 to 30 feet in height, and that he

had seen a dozen or more of the Jackson stackers used in his neighborhood for the stacking of hay. P. G. Schmeiser testified that he began the manufacturing of the derricks which bore his name in 1904 and 1905 in that region, and that his derricks were approximately 30 feet high, and that prior to his connection with that particular derrick similar derricks had been manufactured by Brown & Donnewith at Davis from whom he had taken the manufacturing over, and that he had seen derricks in use in that part of the country that he had not sold. Ed. Moranini testified that a stiff boom Schmeiser derrick had been on the Cowell ranch at Perkins, about three and a half miles from the Humphrey place, since 1904, and that he had used it there in 1905 and had driven it back and forth along the highway and under the high-power wires of the Great Western Power Company.

All of the testimony showed that the movement of derricks exceeding in height that at which the wires were strung along the highway and across the Humphrey lane was not an infrequent or uncommon occurrence. It was not, it is true, as ordinary and usual a use of the highways as that of wagons, automobiles, and other vehicles, but in the haying and threshing season, when their use was called for, these derricks are shown to have been quite properly and frequently conveyed over the highways, a fact which it was the duty of the defendant to have ascertained before stringing its wires so as to make provision for the free passage of these derricks under them.

It is in evidence that many telephone and high power wires like those of defendant were strung along the highways at heights the same and even lower than the wires of defendant, but this is of no consequence, and can afford no protection to the defendant in its invasion of the right of those who were entitled to a safe and unobstructed ordinary use of the highways. It only increased the danger and liability to injury of those who had a right to an unobstructed passage under them.

As the evidence justified the verdict we proceed now to a consideration of other points.

It is claimed by defendant that plaintiff was guilty of contributory negligence as matter of law. We cannot agree with this claim. This is not a case where one had knowledge that electricity would injure and kill if he placed himself in actual contact with it and who, nevertheless, carelessly and recklessly

does so.  Plaintiff, at the time of the accident, was only eighteen years of age, and while he had a general knowledge that electricity was dangerous if one touched the wires over which it was being conducted he testified that he did not know that the wires of the defendant were high-power transmission wires, and was entirely ignorant of the propensity of electricity of that high power, when some conducting material is brought into close proximity to it, though not in actual contact, to arc or leap over the intervening space.  It does not appear that any of the parties engaged in moving the derrick were aware of the propensity of electricity to so leap or spark over.  Plaintiff and these others thought there was entire safety if the derrick boom should be brought under the wires without coming into actual contact with them, no matter how near to the wires it might otherwise be.  In this belief with respect to electricity they took the precaution by actual observation to ascertain whether the boom could be brought under the wires without contact with them and, being of opinion that it could, made the effort which resulted so disastrously to the plaintiff.  The claim of the defendant was that in fact no precautions were taken to ascertain whether the boom could be brought under the wires or not, and that in attempting it there was an actual contact with the wires, or, if not, there was no precaution taken to keep the boom as far from the wires as possible.  On the other hand, there was very substantial evidence that there was no contact between the boom and the wires, and that notwithstanding the ignorance on the part of all engaged in moving the derrick that electricity might by arcing connect with the boom though not in actual contact with it, they, nevertheless, used every effort to keep the boom as far from the wires as possible.  Under these circumstances it could not be said as a matter of law that the plaintiff was guilty of contributory negligence.  It was a question of fact for the jury, taking into consideration the youth of the plaintiff, his knowledge or ignorance of electricity and its propensities and the acts which it is claimed were performed in attempting to get the derrick under the wires, to say whether the plaintiff had exercised ordinary care in doing so or was guilty of contributory negligence.

Defendant complains of the refusal of the court to give several instructions asked by it and to the giving of one with a modification.  An inspection of the record shows that the

court instructed the jury quite fully as to all matters of law necessary for their enlightenment and instruction in determining the rights of the parties to the action. No complaint is made by it as to any of these instructions. The instructions tendered by defendant and refused by the court were, in our judgment, proper or pertinent to the case or its consideration by the jury. The instruction that was modified as presented by defendant stated that the defendant had a right to maintain its pole line along the Middle Jackson road. This was not questioned in the case. The modification complained of was in the court adding to it, in effect, that this was true, provided the defendant exercised a high degree of care in placing its pole line, as had been fully explained to them by other instructions. No reasonable exception can be taken to this modification. It is unnecessary to refer particularly to the other three instructions, the refusal to give which is assigned as error. Two of them were properly refused as going to the weight of evidence, and in so far as any of them contained any legal principles the jury were fully informed as to them by instructions given in the general charge.

Several rulings of the court respecting evidence are assigned as error, but a careful examination satisfies us they have no merit, so we do not discuss them.

Having considered all the points made for a reversal and finding no reason why the judgment and order should be disturbed, they are both affirmed.

Melvin, J., and Wilbur, J., concurred.

Hearing in Bank denied.