[L. A. No. 4919. Department Two.—July 23, 1919.]

## P. A. MINTER, Respondent, v. SAN DIEGO CONSOLIDATED GAS & ELECTRIC COMPANY, (a Corporation), Appellant.

[1] NEGLIGENCE — KILLING OF BOY WHILE CLIMBING TREE — ELECTRIC SHOCK FROM POWER WIRE—PLEADING—SUFFICIENCY OF COMPLAINT. In an action to recover damages for the death of plaintiff's son, who was killed by an electric shock from one of the defendant's power wires while he was climbing a tree growing on the highway immediately in front of his father's premises, and whose death was alleged to have been caused by the negligence of defendant in maintaining imperfectly protected wires at an improper distance from the tree, the court did not err in overruling the demurrer to the complaint, where it alleged a duty on the part of defendant to so maintain its wires that they would not endanger persons in the tree, a breach of such duty, and an injury to plaintiff resulting from that failure of duty.

[2] Electric Corporations—Maintenance of Wires—Proximity to Tree—Attraction to Children.—A corporation maintaining electric power lines strung upon wooden poles along a public highway in a country district, one wire being strung at a height of about twenty-seven feet from the ground and at a distance of about fourteen or sixteen inches from a tree in front of plaintiff's premises, and another wire being strung six or eight feet higher and at a distance from the tree of about three feet, was not bound to anticipate that children might be attracted to climb into the tree where they might be endangered by the wires, where the tree was nearly three feet in diameter at the ground, the first limb branching out over six feet from the ground and for a considerable distance between the lower branches and the defendant's wires the tree was practically bare of limbs.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Reversed.

The facts are stated in the opinion of the court.

Sweet, Stearns & Forward for Appellant.

Crouch & Chambers and Wade Garfield for Respondent.

LENNON, J.—This is an appeal from a judgment upon a verdict for the plaintiff in an action to recover damages for the death of the plaintiff's son. The deceased, a boy sixteen years of age, was killed by an electric shock from one of the defendant's power wires while he was climbing a eucalyptus tree growing on the highway immediately in front of his father's premises. The death was alleged to have been caused by the negligence of the defendant in maintaining imperfectly protected wires at an improper distance from the tree.

[1] The court did not err in overruling the defendant's demurrer to the complaint. The complaint alleged a duty on the part of the defendant to so maintain its wires that they would not endanger persons in the tree, a breach of this duty, and an injury to the plaintiff resulting from that failure of duty. The complaint, therefore, stated the three elements necessary to sustain an action to recover damages for negligence. (*Fallon* v. *United Railroads,* 28 Cal. App. 60, [151 Pac. 290].)

Upon an analysis of the evidence adduced on behalf of the plaintiff, we are of the opinion that the appellant's motion

for a nonsuit at the close of the plaintiff's case should have been granted, and we are satisfied that the evidence as a whole does not support the verdict.

The facts of the case are these: The deceased was killed on the second day of March, 1915. On that day, the plaintiff owned land in San Diego County, situated in a country district and bounded by a public highway. Upon this land he maintained a small store patronized by the neighbors, passersby, and by children from a school which was not far distant. There was a eucalyptus tree in front of the premises and in the highway. This tree was about two and a half feet in diameter near the ground and a little over ten inches in diameter at the height of thirty-five feet from the ground. The first limb of the tree was approximately six and a half feet from the ground. The defendant maintained power wires strung upon wooden poles set along the highway on the side upon which the plaintiff's land was located. One wire was strung at a height of about twenty-seven feet from the ground and at a distance from the tree of about fourteen or sixteen inches. It carried two thousand three hundred volts, and was insulated. The insulation did not make the wire safe to handle and was particularly inefficacious when it was wet. Another wire was strung six or eight feet higher and at a distance from the tree of about three feet. This wire carried eleven thousand volts and was not insulated. There was a crotch in the tree between the two sets of wires. There had been a shower on the morning in question, but the weather had cleared before the accident. The deceased was in the third year of high school and had worked with a pumping plant operated by electricity and had kept two automobiles in order. There was no evidence to show that he had ever before climbed over fifteen or eighteen feet into the tree. Some days before the accident, the defendant's workmen had trimmed the tree. There were some twigs left up in the tree described by the plaintiff as "small branches about the size of a wire . . . and leaves on the end of them, little green branches that come in pulling larger branches down." It seems that there had been some discussion between the plaintiff and the deceased about removing these twigs. But on the day in question, the deceased started up the tree without his father's knowledge and for a purpose not disclosed by the plaintiff's evidence. The plaintiff was at the time pulling

weeds near by.   He looked up and saw the boy in the tree
and afterward looked down again to his work.   About ninety
seconds after that he.heard a sliding noise in the tree.   Look-
ing up he saw the body of the deceased lodged in the crotch.
The body was then in a position to indicate that it had slid
down the trunk of the tree from a position facing north.   In
that position, the wires of the defendant would have been to
the right of the deceased.   The boy's right hand was badly
blistered and burned with the exception of the thumb, index
finger, and the portion of the hand below the middle of the
palm.   There were five punctuated burns on the left leg be-
tween the knee and the pelvis.   The deceased had apparently
been instantly killed.

It is not disputed that the defendant might lawfully main-
tain its power wires along the highway in front of the plain-
tiff's premises, being under the duty, however, to exercise
such care in the operation thereof as would be exercised by a
reasonably prudent and skillful person under the same or
similar circumstances.   The plaintiff does not contend, nor,
indeed, in view of the generally known and accepted prac-
tices of electric companies, could he well contend that there
was a failure to use due care in maintaining an insulated two
thousand three hundred volt wire twenty-seven feet from the
ground or in maintaining an eleven thousand volt uninsulated
wire at about thirty-five feet from the ground carried through
a country district on wooden poles set along a public highway.
The breach of duty alleged was in maintaining these wires
without further protection close to the eucalyptus tree in
front of the plaintiff's premises.

If, guided by those considerations which ordinarily regu-
late the conduct of human affairs, an ordinarily prudent per-
son would have had reasonable ground to suspect that the
wires so placed would cause injury, the plaintiff can be said
to have proved a breach of duty.   And if reasonable men
might fairly differ as to the answer to this question, the ver-
dict for the plaintiff should not be disturbed.   We are of
the opinion, however, that it could not be fairly and reason-
ably found that an ordinarily prudent person would have con-
sidered additional precautions necessary under the circum-
stances here presented.

The plaintiff relies on the case of *Giraudi* v. *Electric Imp.
Co.*, 107 Cal. 120, [48 Am. St. Rep. 114, 28 L. R. A. 596, 40

Pac. 108], where it was said that there was sufficient proof of negligence where it was shown that the defendant had failed to raise its current bearing wires so high above a hotel roof, on which they were placed, that those having occasion to go there would not come in contact with them. It is to be noted, however, that the facts in that case showed that the plaintiff was injured while in the discharge of his duty in doing some work on the roof of the hotel where any person called upon to look after the structure or the signs placed thereon might be expected to have to go.

On the other hand, in *Fairbairn* v. *American River etc. Co.,* 170 Cal. 115, [148 Pac. 788], it was held that a power company whose wires were twenty-seven feet eight inches above the ground was not bound to anticipate that persons might wish to transport along the road under these wires a hay derrick extending to a higher elevation. It was held to be the duty of the company ·to consider carefully all uses of the highway reasonably to be anticipated and to take precautions to prevent its wires from interfering therewith. The same rule was announced on the appeal from the judgment rendered after the second trial in that case, though new evidence which had been adduced was held to warrant a finding of negligence. (*Fairbairn* v. *American River etc. Co.,* 179 Cal. 157, [175 Pac. 637].) By analogy, the defendant in the case at bar was bound to prevent its wires from interfering with any use of the highway and, in particular, of the eucalyptus tree which was reasonably to be anticipated. It affirmatively appears from the plaintiff's testimony that the trees were trimmed by the defendant's workmen. No evidence was adduced to show that the tree was used or needed for anything but shade or ornament or to show the existence of any custom with reference to the care of the tree of which the defendant would be reasonably expected to take notice and which would be likely at times to require the presence of the deceased or of any other person in the tree at a height of twenty-seven feet from the ground. In the absence of such evidence, we do not think that the existence of any such business or duty was fairly inferable under the circumstances here presented.

The plaintiff also relies upon *Temple* v. *McComb Co.,* 89 Miss. 1, [119 Am. St. Rep. 698, 10 Ann. Cas. 924, 11 L. R. A. (N. S.) 449, 42 South. 874], wherein it was said that "the

immemorial habit of small boys to climb trees filled with abundant branches extending almost to the ground is a habit of which companies stretching their wires over such trees must take notice." [2] The case does not support the plaintiff's contention that the defendant was bound to anticipate that children might be attracted to climb into the tree where they might be endangered by the wires. An examination of the photographs, appended to the record as plaintiff's exhibits "A," "B" and "C," as well as uncontradicted testimony, shows that the tree in question was not one likely to appeal to young and irresponsible children. It was nearly three feet in diameter at the ground. The first limb branched out over six feet from the ground. For a considerable distance between the lower branches and the defendant's wires the tree was practically bare of limbs. Although the plaintiff stated that school children were wont to frequent his store and to gather around the tree, there was no attempt to show that any of them had ever undertaken to climb the tree. The facts of the case, so far as they bear upon the duty of the defendant to anticipate that the wires might be a source of danger to irresponsible juvenile climbers, are more analogous to those in *Mayfield etc. Co.* v. *Webb*, 129 Ky. 395, [130 Am. St. Rep. 469, 18 L. R. A. (N. S.) 179, 111 S. W. 712], where it was held that the company was not bound to anticipate that children would be attracted to climb two nearly parallel guy wires placed a short distance apart at an angle of forty-five degrees from the ground and passing within eight inches of an electric wire at a height of eighteen feet. Again, in *Graves* v. *Washington etc. Co.*, 44 Wash. 675, [11 L. R. A. (N. S.) 452, 87 Pac. 956], it was held that the company was not bound to anticipate that boys would climb into danger from its wires, placed near the piers of a public bridge, thirty feet above the roadway. This decision was made in the face of evidence that the piers were so constructed that their braces formed a ladder which could be easily ascended and that boys sometimes climbed there for purposes of sport or to catch pigeons which nested about the bridge. A judgment for the plaintiff was reversed and the cause remanded with instructions to dismiss the action.

The plaintiff appears to maintain the proposition that because a person might climb the tree without committing a trespass, it was incumbent upon the defendant to assume the

burden of keeping its wires so protected that a climber would not be subjected to risk. That, however, is not the test. The question is not what a person might lawfully do, but what the defendant was bound, in the exercise of reasonable prudence, to assume that a person would be likely to do. (*Wetherby* v. *Twin State Co.*, 83 Vt. 189, [21 Ann. Cas. 1092, 25 L. R. A. (N. S.) 1220, 75 Atl. 8]; *Brush Co.* v. *Lefevre*, 93 Tex. 604, [77 Am. St. Rep. 898, 49 L. R. A. 771, 57 S. W. 640].)

The case of *Freeman* v. *Brooklyn Heights R. R. Co.*, 54 App. Div. 596, [66 N. Y. Supp. 1052], is instructive in view of the theory advanced by the plaintiff that the defendant's workmen may have left green branches touching the wires and that through them the current may have been communicated to the body of the deceased. The plaintiff in that case was using a public bridge at the time of his injury. Instead of following the footpath, however, he had started to walk across on a girder which was 115 feet long and had a rise of thirteen feet in the center. The defendant was lawfully maintaining a trolley wire on the bridge together with a guard wire. The guard wire should not have been charged with electricity, but current had in some manner leaked into it. While crossing the girder, the plaintiff was struck by this guard wire and suffered the injuries complained of. Although the plaintiff was using a public highway, it was held that, inasmuch as the defendant was not bound to anticipate that such a use would be made of the girder, it was under no active duty to keep its wires so protected as to make such use safe.

There is no merit in the contention of the defendant that the court should have found as a matter of law that the plaintiff was precluded from recovering by reason of contributory negligence on his part or on the part of the deceased. The defendant introduced evidence to show that the plaintiff was fully aware of the danger of coming into proximity to the wires and of the fact that the deceased was about to do so and that he failed in his duty to exercise his parental authority to keep the boy out of danger. The evidence on behalf of the plaintiff, however, tended to contradict this and one of the defendant's experts stated in effect that he did not consider it particularly dangerous to climb near the wires. The question of the plaintiff's negligence was, therefore, properly a question of fact for the jury. It was not shown

beyond question that the deceased was guilty of some negligent act after entering the zone of danger. The question of his negligence was, therefore, also a question of fact for the jury.

While isolated sentences from the court's instructions to the jury, considered alone and unqualified by the context, do, in some instances noted by the defendant, appear to be erroneous or misleading, the instructions, viewed as a whole, are sufficiently clear and correct.

The judgment appealed from is reversed.

Melvin, J., and Wilbur, J., concurred.