[S. F. No. 19039.   In Bank.   Nov. 9, 1954.]

ARTHUR NEVIS, Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

Robert H. Gerdes, John J. Briare, J. J. Quill, Dana, Bledsoe & Smith and R. S. Cathcart for Appellant.

M. F. Hallmark and William J. Thorburn for Respondent.

SCHAUER, J.—Defendant appeals from a judgment rendered upon a verdict in plaintiff's favor in his action to recover for personal injuries resulting when a boom on a hay derrick he was operating on ranch land came into contact with defendant's high voltage wires. We have concluded that error in the instructions, complained of by defendant, was invited by it, that its other contentions are untenable, and that the judgment should be affirmed.

From the pleadings and the evidence it appears that the hay derrick was of a type in common use in the area in hay loading, and had been operated by its owner, Fernandez, for some 15 years. It was mounted upon a carriage fitted with wheels, was drawn about and operated by a jeep, and was

equipped with a boom which could be raised and lowered. When in use the boom was raised and held in position by a chain.

On the morning of the accident plaintiff drove this equipment, with the boom in a lowered or horizontal position, to the Amen ranch, where the hay was to be loaded. Just before turning off the public road into the private entrance to the ranch plaintiff saw some wires running from the road to the house—which was about a block distant on the private roadway—but did not know whether they were power or telephone wires. Plaintiff continued some 600 feet on past the house until he came to the haystack; he testified that he did not see the high voltage lines under which, regrettably, the hay had been stacked, or the power poles or high voltage signs on the poles. Plaintiff placed the derrick in position, raised the boom, and commenced to load hay from the stack onto a waiting truck. When the truck was partially loaded plaintiff got into the jeep and, without lowering the boom, started to pull the derrick into a different position in order to facilitate further loading. The boom in its upright position could swing to the right or to the left but would not go either up or down as the derrick was being moved. When plaintiff started to move the derrick the boom swung into contact with the overhead wire; plaintiff without knowing this stopped the jeep to move some bales of hay that were in his path; when he stepped out he grounded the current through the jeep and his body, was "knocked out," and received the injuries here involved. He testified that not until he regained consciousness and looked up from where he was lying on the ground awaiting an ambulance, did he see the wire which the boom had contacted; that even though he had been looking up during the work of loading, his attention had been focused on the workman who was on top of the haystack sticking the "hooks onto the bale" and on the man who was in the truck taking the hooks off; that he had his "mind on them all the time" and had to be "very careful" so they would not be struck and injured by the hooks and bales of hay which "swing very fast."

The ranch owner, Amen, testified, but plaintiff denied, that Amen had warned plaintiff of the wires. Plaintiff had worked around high power lines before, but not closer than 25 feet to them, and knew what they looked like, but he had not previously worked on the Amen ranch. He further testified that when "we move the derrick around" in the open field it is with the boom up, but when moved on the highway the

boom is down; when down the boom was about 10 or 11 feet from the ground; the maximum height of the boom when up was 23 feet 2 inches; at the time of the accident the top of the boom was at a height of 20 or 21 feet and contact with the wire took place at a point about 9 inches from the top.

Fernandez, who owned the equipment plaintiff was operating but who testified that plaintiff was not his employe, stated further that "we usually load out in the open field" and that the occasion plaintiff was injured was the only time he recalled that any of his equipment worked near power wires. Hoxie, the trucker who was helping with the loading, testified that "as a general rule, the farmers stick their hay out away from the wires."

Defendant first contends that the evidence was insufficient to support a finding of negligence on its part, and in particular urges prejudicial error in the giving of two instructions requested by plaintiff. ▮ The first of such instructions was that "At the time and place of the accident in question, the defendant Pacific Gas & Electric Company was required to maintain its power lines at least 22 feet above the ground."

General Order 95 of the Public Utilities Commission, relied upon by defendant, establishes in Rule 37 a basic minimum clearance of 25 feet above the ground along thoroughfares in rural districts or across other areas capable of being traversed by vehicles or agricultural equipment. Subparagraph (a) of Rule 54.4-A (2) permits reduction of the clearance to 22 feet in rural districts, "for conductors crossing or overhanging traversable portions of public or private roads or driveways." Subparagraph (b) of the same rule permits reduction of the clearance to 18 feet "for lines across areas capable of being traversed by agricultural equipment and along roads where no part of the line overhangs any traversable portions of a public or private roadway." Amen, the ranch owner, testified that a private ranch roadway surrounded the area where the haystack was located and plaintiff was injured and that the wires overhung such roadway on both sides of the area. Thus, the clearance of the wires was required to be at least 22 feet at the points where they cross the roadway but could be reduced to only 18 feet in the area where plaintiff was injured. As stated hereinabove, there was evidence that the clearance was over 19 but less than 21 feet where the boom contacted the wires.

Although it is thus evident that the instruction now attacked by defendant—that a 22-foot clearance was required

—was erroneous, it further appears that the error was invited by defendant. It was defendant who introduced General Order 95 as an exhibit during the trial and at defendant's request the court instructed the jury that "At the time and place of the accident in question, the defendant Pacific Gas & Electric Company was permitted to maintain its power wires a distance of 22 feet above the ground." The record discloses no request for an instruction that a minimum clearance of 18 feet was permitted over the area where the accident occurred. Having thus invited the error of the trial court and so contributed to inducing the jury to erroneously believe that if they accepted the testimony that the clearance of the wires was less than 22 feet, then defendant was guilty of negligence, defendant is estopped to complain on appeal that the evidence is insufficient to support a finding of such negligence, or that, since plaintiff was of a class designed to be protected by the 18-foot rule, defendant's violation of the 22-foot rule did not contribute proximately to his injuries. (*Jentick* v. *Pacific Gas & Elec. Co.* (1941), 18 Cal.2d 117 [114 P.2d 343] ; see also 4 Cal.Jur.2d 420-424, and cases there cited.)

■ The seeming harshness of the last mentioned rule as applied here is ameliorated somewhat by two considerations: (1) Compliance with the general orders of the Public Utilities Commission does not establish as a matter of law due care by the power company, but merely relieves it "of the charge of negligence *per se*. It does not affect the question of negligence due to the acts or omissions of the company as related to the particular circumstances of the case." (*Lozano* v. *Pacific Gas & Elec. Co.* (1945), 70 Cal.App.2d 415, 424 [161 P.2d 74].) (2) Since the boom on the derrick here involved could be raised to a height of 23 feet 2 inches and since that type of derrick was in common use in the community the jury may have based its verdict on a finding that defendant was negligent in not having maintained its high voltage wires at a height over the fields sufficient to permit safe operations, including moving of such derricks. This aspect of the case is further developed in connection with the next assigned error.

■ The other instruction, the giving of which is the basis for defendant's next charge of error, reads as follows: "If you find from the evidence that it was a common practice in the community where defendant was maintaining the power lines involved in this action, of persons loading hay to use derricks such as the one used by the plaintiff in this case, then you are instructed that it was the duty of the defendant

to have ascertained such fact and to use reasonable care in maintaining its wires across the agricultural lands and private roads in said community at such height that there was no likelihood that such derricks would come in contact with its power lines, and if you find that defendant failed in this case to maintain the power lines in question according to this requirement, defendant is guilty of negligence.''

Defendant urges that this instruction ''forces the jury to infer'' that if hay loaders with drop booms were found to be commonly used — as was established by uncontradicted evidence — then defendant ''should have anticipated'' that plaintiff would raise the boom and move it against the high voltage wires, and that the instruction ''required as a matter of law the finding'' that defendant was negligent ''merely from the fact that the hay loader . . . *could* contact'' the wires and thereby made the defendant an insurer against such accidents as here involved. However, the attacked instruction, in the light of other instructions[1] which correctly declare

[1]Among such instructions are the following: ''[B]efore the plaintiff can recover, it must first appear, and by a preponderance of the evidence, that the defendant was guilty of some act of negligence which contributed proximately to the accident.''

''Now, in a case such as has been presented to us, there is no legal presumption of negligence, but in reality negligence is a fact, which like other facts alleged by the plaintiff, must first be proved by him to entitle him to recover; so therefore, the mere fact that an accident has occurred, or that a complaint has been filed, or that negligence has been charged, or that injuries have been sustained, of course would raise no presumption of negligence.''

'' [A] company maintaining an electric power transmission line along or over agricultural land or a private road is required to exercise a high degree of care in placing the wires so as not to interfere with traffic over agricultural land or a private road and so as to avoid contact with and injury to any person or object which may reasonably be expected to pass under the wires.''

''The same duty was imposed upon the plaintiff Nevis to prevent being injured as was imposed upon the defendant to prevent injuring him; and if the said Nevis received the injuries which caused his death [sic] directly and proximately through any negligence of himself, then your verdict must be against the plaintiff and in favor of the defendant.''

''The same duty was imposed upon the plaintiff to prevent being injured as was imposed on the defendant to prevent injuring him, and if the plaintiff received his injuries directly and proximately through the mutual fault or negligence of himself and the defendant, then your verdict must be against the plaintiff and in favor of the defendant Pacific Gas & Electric Company.''

''The law does not require that a company who maintains even so dangerous an instrumentality as a highly charged electric wire shall anticipate at its peril every possible circumstance under which some person might make a contact with such wire, resulting in injury or even death. Reasonable care, not insurance against every possible accident, is the measure of liability.''

"There was no duty on the part of the Pacific Gas & Electric Company

the burden of proof and expressly negate any theory that defendant was an insurer of plaintiff's safety, does not reasonably admit of the interpretation suggested by defendant; on the contrary its more reasonable meaning appears to be that defendant had the duty to ascertain the community practice and then use reasonable care in maintaining its wires at such height that there was no *likelihood* of contact with the commonly used collapsible derricks. Likelihood means probability, not possibility. Whether it would be probable that one accustomed to keeping the boom down when moving the derrick on a road but up when working in the field would attempt to move it in the field without first looking for overhead obstructions to determine whether the boom should be lowered was, we believe, a matter properly left to be determined by the jury under the instruction quoted.

Defendant also argues that the rule of *Fairbairn* v. *American River Elec. Co.* (1918), 179 Cal. 157, 160-164 [175 P. 637], relied upon by plaintiff in support of the questioned instruction, only required that any subsequent construction over roads should accommodate then-existing usage, whereas the present instruction "required, in addition, a re-construction of all lines over all agricultural lands to accommodate subsequently developed usage." Again, it is apparent that the instruction makes no such sweeping requirements, but merely states that defendant must use reasonable care in maintaining its wires at such a height as to avoid the likelihood

to warn Arthur Nevis of high voltage wires because said wires were open to view and presented an apparent danger by reason of common knowledge of the fact that power lines such as the ones here in question are dangerous instrumentalities, and ordinary prudence dictates that those situated as was Mr. Nevis should refrain from exposing themselves to the danger by contact with such wires.''

Defendant "had a right to assume said Arthur Nevis [plaintiff] would obey the rules of the Industrial Accident Commission and not work on any kind of movable equipment within six feet of a high voltage line.''

''If you find that Arthur Nevis was a man of ordinary intelligence and common experience and that he knew or in the exercise of ordinary care should have known that the wire in question was an electric wire and did not know whether or not the wire was charged with electricity at the time of the accident; and that he brought the boom or some part of the hay loader into contact with the said electric wire, you are instructed that he was guilty of negligence and if you further find that his negligence proximately contributed in the least degree to his injuries, if any, your verdict must be against plaintiff and in favor of the defendant Pacific Gas & Electric Company.''

Instructions were also given on the defense of voluntary assumption of risk by plaintiff, in addition to those on contributory negligence, quoted hereinabove.

of injury. Moreover, Amen testified that he had owned the ranch for 11 years and that the wires here involved had been "changed . . . six or seven years ago" and had thereafter remained the "same way." Defendant further mentions that the uncontradicted evidence was that only hay derricks with a drop boom were currently in common usage in the area here involved "and elsewhere," but that there "is no evidence whatsoever showing usage of 'drop boom' derricks prior to the date of construction of the wires in question." However, since "drop boom" derricks may inferentially operate safely with a lesser clearance than is necessary to accommodate derricks of the stationary type which must be moved with boom erect (such as that involved in the Fairbairn case), no prejudice would appear to have resulted to defendant in this connection.

Defendant's final contention—that plaintiff was guilty of contributory negligence as a matter of law—is likewise not tenable. Although plaintiff admittedly violated section 385 of the Penal Code and section 2603 of the Electrical Safety Orders of the Industrial Accident Commission, both of which prohibited operation of the derrick in such close proximity to the high voltage wires, he testified that he did not see the wires and did not know they were there until after he was injured. Nonnegligent ignorance of the facts which bring a regulation into operation will support a finding that violation thereof is civilly excusable. (*Ornales* v. *Wigger* (1950), 35 Cal.2d 474, 480 [218 P.2d 531]; *Graf* v. *Garcia* (1953), 117 Cal.App.2d 792, 797-798 [256 P.2d 995].) We are satisfied that the court correctly left to the jury the determination of whether plaintiff was negligent in failing to perceive or realize the presence of the high voltage wires either when he entered the ranch or during the course of the loading operations. (See *Polk* v. *City of Los Angeles* (1945), 26 Cal.2d 519, 524, 529-532 [159 P.2d 931]; *McCormick* v. *Great Western Power Co.* (1933), 134 Cal.App. 705, 712-713 [26 P.2d 322]; *Neel* v. *Mannings, Inc.* (1924), 19 Cal.2d 647, 655-656 [122 P.2d 576].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

EDMONDS, J.—As conceded by the majority opinion, the accident occurred in an area in which, according to a general

order of the Public Utilities Commission, the power company was allowed to maintain its wires at a height of 18 feet, and the instruction establishing a greater height was erroneous. But the error is said to have been invited by the power company's failure to request an instruction regarding the 18-feet requirement and in requesting another one to the effect that it would be under no liability if it maintained its wires at a height above 22 feet.

The defendant's failure to tender a correct instruction and its request for one which, although incomplete, was correct, do not bar it from objecting upon appeal to an erroneous one. Very closely in point is *Tabata* v. *Murane,* 24 Cal.2d 221 [148 P.2d 605], involving an action upon a creditor's claim. In three counts, the complaint included several items, to some of which the defendant pleaded the bar of the statute of limitations. An instruction was given upon that defense, stating the law erroneously and incompletely. The defendant, however, had offered only a single instruction which was incomplete. In that case, Mr. Justice Schauer said: "Instructions specifically and fully defining the applicable periods and the circumstances upon which such law would be operative should have been requested by defendant and given by the court but inasmuch as the only instruction on the subject which was given was prejudicially erroneous, as hereinabove shown, the defendant is not precluded from asserting that error was thereby committed. The true rule is that stated . . . in *Colgrove* v. *Lompoc etc. Club* (1942), 51 Cal.App.2d 18, at page 24 [124 P.2d 128] : 'If the law applicable to the facts of a case is stated correctly in a general charge to the jury, a party may not, in the absence of a request for a more specific or elaborate instruction, complain that a more specific or elaborate instruction should have been given. [Citations.] In this case, however, the instructions as to the duty owing a licensee injured by active negligence were erroneous, and plaintiff is not precluded from asserting that error was committed in instructions which were given, even though he did not request a proper instruction.' " (Pp. 227-229.)

The instruction of which complaint was made in the Colgrove case was that the defendant landowner owed only a duty to his licensee to refrain from causing willfully and wantonly injury to him. Although the evidence showed active negligence on the part of the landowner, the plaintiff requested no instruction upon that theory. Despite such failure, it was

held that the instruction given was erroneous and the court affirmed an order granting a new trial upon the ground of "errors of law occurring in the trial." Upon principle, there is little difference between an instruction which erroneously states that a defendant is negligent only if causing willful and wanton injury and one which, in effect, erroneously states that a defendant is relieved from a finding of negligence only if it maintains its power lines above 22 feet.

It is suggested, however, that in the present case the harshness of the conclusion regarding "invited error" is "ameliorated" by the possibility that the jury may have found liability upon an alternative theory. This theory is that the defendant was negligent in not maintaining its high voltage wires at a height sufficient to accommodate "drop boom" derricks.

Relying upon *Fairbairn* v. *American River Elec. Co.*, 179 Cal. 157 [175 P. 637], the power company points out that its duty extends only to constructing its wires and poles so as to accommodate then-existing usage. There is no evidence in the present record, it says, that "drop boom" derricks were commonly in use when the wires here were erected. These facts and the applicable rule of law apparently are accepted by the majority, but it is said that since those derricks "may inferentially operate safely with a lesser clearance than is necessary to accommodate . . . [other types of derricks], no prejudice would appear to have resulted to defendant in this connection."

That such derricks may be operated more safely than other types is totally immaterial when the inquiry is whether the defendant may be held liable for failing to anticipate and guard against their operation in a manner in which they, and only they, create a danger. It is the fact that they may be operated at a height above 18 feet which is relied upon as putting the power company on notice of their danger. What difference can it make that in other situations they might be operated more safely?

The result of the opinion of the majority is to allow recovery by Nevis upon a record which, as a matter of law, fails to establish a basis for holding the defendant liable upon any theory. One admittedly erroneous instruction is said to have been "invited" partly by the defendant's failure to request a correct one and partly by its request for an incomplete one. It is said that the jurors may have found liability under an instruction upon a different theory which, apparently, it is agreed was also erroneous but not prejudicial. In my

opinion, there is no tenable ground whatsoever for affirming the judgment and it should be reversed.

Spence, J., concurred.

Appellant's petition for a rehearing was denied December 9, 1954. Edmonds, J., and Spence, J., were of the opinion that the petition should be granted.