[Civ. No. 16692. First Dist., Div. One. Jan. 18, 1957.]

JOHN L. PORTMAN, Plaintiff and Appellant, v. CLEMENTINA COMPANY et al., Respondents; EDWARD A. LARKIN, Defendant and Appellant.

652

Bledsoe, Smith, Cathcart & Phelps, Bledsoe, Smith, Cathcart, Johnson & Phelps and Donald J. Kennedy, for Plaintiff and Appellant.

William J. Connolly for Defendant and Appellant.

Hancock, Elkington & Rothert, Harlow P. Rothert and R. Edward Burton for Respondents.

AGEE, J. pro tem.*—This is an action for damages resulting from the creation of a nuisance. The complaint alleges that the defendants, without procuring permission from the city and county of San Francisco, as required by city ordinances, dumped rock and dirt on Shafter Avenue, San Francisco, an unaccepted public street; that this interfered with the drainage customarily afforded by said street, with the result that plaintiff's premises were flooded and plaintiff was thereby damaged.

The parties are described as follows: Plaintiff manufactures sweeping compounds, waxes and other floor maintenance materials under the name of Flor-Ton Chemical Company, at 1131 Shafter Avenue, San Francisco; defendant Larkin owns all of the real property in the eleven hundred odd-numbered block on Shafter except the premises occupied by plaintiff and one O'Neill; defendants Devincenzi Bros. and Company and A. D. Devincenzi (hereinafter referred to collectively as Devincenzi) placed rock and dirt fill on Larkin's property and on Shafter Avenue; defendants Clementina Company and Clementina Contractors Trucking Service Company (both referred to hereafter as Clementina) also placed fill material on Larkin's property.

*Assigned by Chairman of Judicial Council.

Three appeals arose out of this action. A jury verdict of $10,000 was returned against Larkin and he has appealed from the judgment entered thereon. Devincenzi obtained a nonsuit at the completion of plaintiff's case and plaintiff has appealed from the judgment which followed. The jury returned a verdict in favor of Clementina and plaintiff has appealed from the judgment thereon.

A general description of the area follows. Shafter Avenue runs east and west. The eleven hundred block is bounded on the east by Griffith Street and on the west by Hawes Street, both running north and south. The next street south of and running parallel to Shafter is Thomas Avenue. The dimensions of this block are 400 feet (on Shafter and Thomas) by 200 feet (on Griffith and Hawes). Larkin owned the entire block with the exception of a parcel having a frontage on Shafter of 87½ feet and a depth of 100 feet. The building in which plaintiff conducted his business was on the westerly part of this parcel and had a frontage of 30 feet. One O'Neill conducted a general contracting business in a building on the easterly part of the same parcel. The distance from the easterly side of O'Neill's building to Griffith Street was 200 feet.

Plaintiff had been in possession of the premises occupied by him since 1946 or 1947. During the fall of 1951, Larkin directed Devincenzi and Clementina to dump fill on his property. Prior to this, surface water ran down Shafter Avenue from the west toward the east. There was a shallow ditch about one or two feet deep and about three or four feet wide running along the southerly side of Shafter Avenue, commencing at a point a few feet east of the O'Neill property and extending easterly to Griffith Street. This ditch helped to carry off the surface water. For the purpose of improving the access to the Larkin property, Devincenzi, with Larkin's knowledge and consent, also dumped fill on Shafter Avenue, thereby filling up the ditch and raising the grade of the street. As the result, when heavy rains fell on December 1, 1951, and thereafter, the surface waters backed up and flooded plaintiff's premises. The jury estimated his damages at $10,000.

Plaintiff's cause of action is founded upon the theory of a nuisance, which is defined in section 3479 of the Civil Code as "Anything which is . . . an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of . . . property, or unlawfully obstructs the free passage or

use, in the customary manner, of any . . . street, or highway . . ." Section 731 of the Code of Civil Procedure provides: "An action may be brought by any person whose property is injuriously affected, . . . as the same is defined in section thirty-four hundred and seventy-nine of the Civil Code, . . ."

## THE LARKIN APPEAL

Larkin's main contention is that the jury was instructed that he was absolutely liable, even though he was without fault. His brief discloses that, by "fault," he means intentional harm or negligence. Neither of these elements is involved in this case. ▮ Malice may be an issue in a nuisance case (*Griffin* v. *Northridge*, 67 Cal.App.2d 69, 75 [153 P.2d 800], "spite fence") and negligence very often is. (20 Cal. Jur. p. 268.) In the instant case, however, the complaint alleges a cause of action under section 3479 of the Civil Code for the unlawful obstruction of the use of a public street and does not depend upon either an intent to harm or negligence. ▮ "According to the generally accepted meaning of the terms 'negligence' and 'nuisance,' proof of negligence is not essential to liability for the creation or maintenance of a nuisance." (20 Cal.Jur., p. 268.) ▮ Furthermore, the jury was not instructed that Larkin was absolutely liable. It was specifically instructed that, in order to recover, plaintiff was required to prove by a preponderance of the evidence that Larkin had created a nuisance, as defined by law, which proximately caused damage to plaintiff. Nuisance was correctly defined in the language of section 3479 of the Civil Code.

▮ Larkin himself proposed the following instruction: "The defendants are not responsible to plaintiff unless the filling of Shafter Avenue created an obstruction to the free use of Mr. Portman's property so as to interfere with the comfortable enjoyment of his life and property, or unless it unlawfully obstructed the free passage or use of Shafter Avenue by Mr. Portman in the customary manner." This instruction states in substance the very principle which Larkin now criticizes. If it was error to so instruct the jury, and we do not believe that it was, it was error invited by Larkin. (*Nevis* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 626, 629-630 [275 P.2d 761].)

▮ Larkin argues that the placing of fill upon his land was for a lawful purpose and was necessary for its beneficial use. He urges that the utility of his activity should be weighed and considered against the harm to plaintiff. A sufficient answer to this is that the plaintiff's cause of action is based

upon the unlawful obstruction of Shafter Avenue and not upon the filling of Larkin's property.

Plaintiff alleged in his complaint that the work upon Shafter Avenue was done without permission as required by section 405 of the Public Works Code of the City and County of San Francisco. Larkin admitted this in his answer. This section provides as follows: "Application for permission to do any street work in or upon any unaccepted public street in the City and County of San Francisco by private contract must be made in writing to the Director of Public Works, which application shall contain a comprehensive description of the work to be done. Said Director shall thereupon investigate such application, and if after investigation the Director determines that the public interest or convenience requires the doing of the proposed work and that the same is expedient and will not be productive of detriment to the public safety or convenience, he is hereby authorized to grant permission for the doing of the same as applied for or as modified by the direction of the City Engineer, subject to the conditions and provisions in this Article hereinafter prescribed and provided." "Expedient," as used in this section, means "suited to the circumstances." (Webster's New World Dictionary.) The obvious purpose of the investigation required is to safeguard against detriment to others which might result from the doing of the proposed work. If the investigation discloses that no such detriment will result the permission would then undoubtedly be granted. However, if the city engineer directs a modification in order to avoid detriment to others, that also would undoubtedly be ordered. In the instant case, it would have been obvious to the city engineer that the raising of the level of Shafter Avenue and the filling up of the ditch between the O'Neill property and Griffith Street would cause surface water to back up during the rainy season and flood plaintiff's property unless a culvert or some other method of draining was provided for. Thus, there is a definite causal relation between the failure to comply with section 405 and the damage sustained by plaintiff.

The trial court instructed the jury as to the general rule of liability for damage resulting from diversion of surface water from the land of one owner onto the adjoining property of another. Larkin contends that this general rule does not apply to city lots and in this he may be correct, generally speaking. (See 1 Cal.Jur.2d 733.) However, the jury was specifically instructed as follows: "The defendants are

not responsible to Mr. Portman for any damages claimed by him in this proceeding unless the filling of Shafter Avenue resulted in or proximately caused the loss for which Mr. Portman now seeks damages, even though the defendants did not have the right to fill Shafter Avenue without a permit from the city authorities to do so.'' It is thus clear that the jury could not have been misled into thinking that plaintiff could recover for the work done by Larkin on his own property.

Larkin complains of the giving of instructions on sections 310 and 4103 of the Building Code of the City and County of San Francisco. Section 310 requires a permit to occupy any part of a street for building operations or any other purpose and section 4103 provides that material for work to be done under a permit shall not be placed on public property so as to interfere with the free flow of water in any street. This was not error. Larkin admitted in his answer and at the trial that he had no permit to dump fill in Shafter Avenue and, as already pointed out, Larkin himself acknowledged in his proposed instructions that he was liable if he ''unlawfully obstructed the free passage or use of Shafter Avenue by Mr. Portman in the customary manner.'' The jury was also instructed as follows: ''I instruct you that in this case in violation of law, if you find that the defendant did commit a violation, it is of no consequence unless the violation was a proximate cause of the injury found by you to have been suffered by the plaintiff.''

The last point made by Larkin is that the judgment should be set aside under the so-called rule of ''avoidable consequences.'' He argues that plaintiff could have easily avoided the flooding by taking steps to prevent it. Just how this could have been done is not clear but Larkin suggests that, inasmuch as O'Neill (who was on higher ground) put in a pump and a drain at a cost of only $150, plaintiff could have done something of the sort. Without passing upon the propriety of instructing on contributory negligence, it is a sufficient answer to this contention to point out that the jury was instructed that the plaintiff could not recover if he did not exercise reasonable care to avoid the damage to himself. The jury by its verdict found, by necessary implication, that plaintiff did exercise such reasonable care and this finding is amply supported by the record. It is true that there is a distinction between contributory negligence and avoidable consequences. Contributory negligence usually refers to conduct at and before the time of injury and avoidable consequences to conduct

after the injury. However, under the facts of this case the concept would be the same as a practical matter because the first flood was the one which did the damage.

Larkin has also called attention to a number of instructions which he contends are conflicting and which must have confused the jury. We do not agree. It is true that the charge was a long one and undoubtedly could have been streamlined. But in essence this is a very simple case. The jury was correctly instructed on the fundamental issues and what plaintiff was required to prove in order to recover. We do not feel impelled to discuss each and every instruction and compare it with the others in order to justify our conclusion that the jury was not misled or confused. The verdict against Larkin was eminently fair and, to say the least, was not a miscarriage of justice either in the broad sense or in the sense of whether Larkin received a trial in accordance with the rules of law pertaining thereto.

### Plaintiff's Appeal From the Devincenzi Judgment on Nonsuit

Devincenzi asserts that it was an independent contractor, that it had completed its work, and that Larkin had accepted the same before the flooding occurred. The general rule is as follows: "A contractor is not liable for injuries occurring after the performance of the contract and the acceptance of the work by the employer, . . ." (13 Cal.Jur. p. 1059.) Devincenzi acknowledges that there are exceptions to this rule, one of which is applicable when the work so performed creates a nuisance per se, citing 27 American Jurisprudence 535, section 56, which states: "In other words, a right of action against an independent contractor for injuries to third persons from defects in completed works may be predicated upon the ground that the finished work is a nuisance, . . ." Section 3479 of the Civil Code proscribes "Anything which . . . unlawfully obstructs the free passage or use, in the customary manner, of any . . . street, . . ." A violation of this section constitutes a nuisance per se. (*Curtis* v. *Kastner*, 220 Cal. 185 [30 P.2d 26]; *People* v. *Amdur,* 123 Cal.App.2d Supp. 951 [267 P.2d 445].)

 In answer to this, Devincenzi argues that section 3479 of the Civil Code does not include drainage of surface waters as being a "use, in the customary manner" of a street. On the contrary, our Supreme Court, in *Shaw* v. *Sebastopol,* 159 Cal. 623 [115 P. 213], and *Richardson* v. *City of Eureka,*

96 Cal. 443 [31 P. 458], treated the drainage of surface waters over a public street as a use thereof by abutting property owners which could not be unlawfully obstructed.

 Devincenzi also contends that the damages sustained by the plaintiff must be the natural result of the filling of Shafter Avenue and that such result must have been reasonably foreseeable. This merely presents a question of fact upon which reasonable minds might differ.

A nonsuit should not have been granted to Devincenzi. The question as to its liability should have been presented to the jury under appropriate instructions.

### PLAINTIFF'S APPEAL FROM THE CLEMENTINA JUDGMENT

 Plaintiff's case is based entirely upon the unlawful filling of Shafter Avenue. There is no evidence that Clementina had any part in this. All of its filling was done on Larkin's property. The jury verdict in its favor was the only one that could have been properly returned.

The judgment against Larkin is affirmed; the judgment in favor of Devincenzi is reversed; and the judgment in favor of Clementina is affirmed. Plaintiff is to recover his costs on appeal from Larkin and Devincenzi in equal portions; Clementina is to recover its costs of appeal from plaintiff.

Bray, Acting P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied February 15, 1957, and the petition of defendant and appellant for a hearing by the Supreme Court was denied March 13, 1957.